The final call, case of the morning call, 209-714 Johnny Allen Pappas v. Chubb Group of Insurance Companies. On behalf of the affluence, Mr. Terrence E. Leonard. On behalf of the affiliate, Mr. Nicholas Mesko. Good morning, Your Honors. Good morning, Mr. Mesko. We're here on an appeal from an order by Judge Stark granting summary judgment to the defendants and directing that we sign an order. And I refused respectfully to have my client sign that order and that's the basis for the appeal. I think I would start by saying very simply, this settlement is conditional upon the following, an executed policy release. Those are the words of Mr. Mortenson, the adjuster, in his email on August 22nd of, I forget the year, but I'm sure you're with me on that. And that was agreed to. The following email back to him some hour later was done. Now, that's the point at which the defendants are claiming, the defendant is claiming, that a contract was formed. But a contract could not have been formed at that point. And why is that? The case law says so, Your Honor, and it's universal. The case law is very, very clear and it says over and over again in several of the cases, in some of the cases even that the defendant has cited, that even when there is an agreement on all issues, and I'm not submitting that there was here, but even if there's an agreement on every issue, if there is a condition proceeding that the matter be finalized with a written release, then that controls unless and until that written release is executed or signed, there is no contract. Even if the parties agree on all the terms and conditions? Yes, and that's what the case law says. And the several cases I cited in the first section all universally hold that. The first case, the LaSalle case that I cited in the second section, for the purpose of showing that there was not a meeting of the minds, also iterated that very principle. So you're characterizing this as a rather simple case. Very. You're saying that irrespective of the terms that the parties have agreed on, unless and until the written release is signed, you have nothing legally. That seems to be the gist of what you're saying. Correct, correct. And I would move on if there's any more questions. I've got a question for you. Sure. You just said that if it's conditioned upon the signing of a written release, there's no contract until it's signed, correct? Yes, Your Honor. But at that point when the done email goes through, were the terms of the release decided upon? No. Now, how do you distinguish that? Because I thought the defendant's position was the only thing that was left was to sign this written agreement because we've already agreed as to what you're waiving, what we're waiving, all of that was resolved. That is the defendant's position that all we have to do is sign it. Right. No, the case law says even when you have agreed on all the material terms of the contract, if there's a condition that the parties agree that this will be a signed release, then there's no contract until that signed release is signed or executed. Even if you've already agreed to the terms of the release? Yes, absolutely. Absolutely. As a secondary argument, I think at some point we'd like you or I would like you to address the apparent authority issue. The apparent authority issue. I will. So I'm going to move then into the second portion of the brief, unless there are any other questions, and that is were all the terms, essential terms, disclosed and agreed upon? And again, the answer is no, they were not, because if you look at the exchange of the emails, you'll see that what they're claiming is that on August 20th, there was a meeting of all the people to try and settle this case. It didn't go. Later that day, the public adjuster calls and says or writes and says a lot of things, but bottom line, we'll reduce our $470,000 amount to $220,000 and et cetera, et cetera. You know, he wants to go after the PDR, and he makes a demand and he reduces his demand to $220,000. Then there's a space and you get to the 22nd and all of a sudden now Mortenson is saying, I've received a phone call, this is a note that he puts in his file, I've received a phone call that, you know, you've offered, your client has offered to take $105,000, and he then emails back to the public adjuster and says, we accept your client's offer to settle for $105,000. This offer is conditioned upon them. And he lists all the elements of the conditions, the first of which is this. The public adjuster says, done, faxed me or emailed a paperwork and could have done. Right, right. And that's where the judge said there was a contract. Couldn't be a contract at that point because of the law. And in addition to that, there was not an agreement of the minds or meeting the minds on all the essential terms of the contract. The contract that, or the release is what I'm talking about, and that release is a contract, of course. That release that was sent out, not right away, it was almost 11 days later or nine days later when they finally sent the release, contained a reservation of federal's subrogation rights. Now, that was never discussed or talked about or agreed upon by the parties, the public adjuster or anyone else in that period of time when we were talking about we accept done. So 30 minutes after the done email is the first time that that subrogation thing is raised and the public adjuster emails 30 minutes after he said done, he says, by the way, one more thing. We want a dollar for dollar recovery. I know you've read it, so I can't. And what's the legal effect of that? Well, I don't know that there is a legal effect of it. I'm citing it for the fact that this is a vital term of the policy that has not been discussed or agreed upon, subrogation. Now, that executed lease or that release hasn't been sent out. When it's sent out nine days later, the subrogation is definitely on the table. The public adjuster has raised it, and now they send out the release, and the release contains a specific reservation of federal's subrogation rights. And as John testified, and it was quoted in the brief, that's exactly the opposite of what John wanted. Let's set that aside for a moment. Let's assume for the sake of the argument that's exactly the opposite of what Pappas wanted. Forget about that for a second. Okay. You've got the email was sent to the adjuster, and it says we agree to settle with these conditions. That arguably under the law, without oversimplifying it, is an offer. Correct? You characterize that as an offer. Yes. Then you've got if he had the authority, the adjuster says done. That arguably is an acceptance of an offer. So if he had the actual or apparent authority, the fact that Pappas, who hired him, didn't want him to sign it without a reservation on the subrogation issue, how would that not be a contract if he had actual authority or apparent authority? Because the condition perceived is there. In whose mind? Not in the state of his mind, apparently, at the moment when he says done. No, the condition perceived was along with Mortensen's idea. He was the one that put the condition perceived on it. And when the public adjuster says done, he's accepting the fact, so the parties are agreeing that this has to be finalized with an executed release, with a signed document, and that's what the case law says. Well, okay, you're saying the case law says, but in terms of what he, when he emailed the adjuster and made the so-called offer, okay, so you're saying an executed policy release and so on, unless and until that's agreed upon, there is no agreement. You're back to your original argument, basically. Right, right. The execution of release trumps everything else you seem to be saying. It does, but I am also very, I want to make it clear that the case law also establishes that there is no meeting of the minds unless and until the parties agree on all the essential terms of the agreement. Now, the agreement was formulated and presented in that release, and there was no agreement ever that they would accept subrogation being reserved by federal. And I think that, you know, does Mortenson have a duty to say to them up front, hey, you know, we've got a subrogation situation here? I'd like to say yeah, but I really can't. I don't think that he has to. This is a hard bargaining situation. He's going to cut his losses. He's going to end the claim, and that's what his job is to do. But the point is that it's not a term that has been discussed, and he puts into this contract that he says has to be signed. It's a condition proceeding. I think I understand the argument on that. Okay. Can you address, aside from that issue, can you address the issue of whether or not the public adjuster had actual or apparent authority to settle this case aside from the subrogation and the release issue? Yes. Okay. Yes. I think I rely on the statute that I cited in the brief. It's the statute that applies to public adjusters, and it applies very much in the same way that the case law applies to attorneys who are representing clients in court or in litigation. We don't have any authority to settle a lawsuit without the client's approval. Is that as a matter of law? Is that what you're saying as a result of it? As a matter of law, you're saying the public adjuster could not settle the claim? Yes, settle the claim. I'm not saying he can't negotiate, but settle the claim, yes. Now, without authority from John, if John gives him authority to do that, sure. You know, we have claims all over, every place, and they have to be resolved in some fashion. So he certainly has, if John gives him the authority, as John stated he did in his deposition, he gave him authority to settle for $105,000 as long as he got dollar for dollar or as long as subrogation was waived. And so he never had authority. The answer to your question, I think, is did he have actual authority to settle for that release as it was initially worded? And the answer is no. All right, what about apparent authority? I don't think apparent authority applies. I've argued that in a briefing. I don't think apparent authority applies in the situation of a public adjuster any more than it does with an attorney. Apparent authority most of the time is to protect somebody who is relying upon, you know, let's say a real estate salesman. That's one of the things that was cited in the briefs, a real estate agency. So apparent authority is to protect the buyer, if you will, from the superior of the agent from saying, hell, heck, I'm sorry, I didn't have any deal with that. You know, I didn't give authority, and then it's all over. So I don't think he had apparent authority. He had actual authority to do what John stated, and that is 105 and a waiver of the subrogation. That's clear. John gave him that authority. He did not have authority to accept any document that would reserve subrogation. Well, that's under the actual authority. But we're talking about apparent authority. He's the adjuster. Obviously, John knows he's communicating back and forth with the company. The company is on the other end thinking, well, why couldn't they think he's been retained to resolve this claim? So why in the minds of Federal wouldn't he have apparent authority? What puts him on notice that he doesn't have authority? Well, it's just the situation not only in that case but in every other case. He has to have his client's authority to negotiate or to deal. Even under apparent authority, you're saying? He has to have their express authority? Are we mixing the two doctrines? No, I don't think so. I hope not. Under apparent authority, yes, the law is he cannot settle that case. He can negotiate it, but he cannot enter into a contract or bind his client to a contract unless the client has given him the authority to do that. Under which doctrine, actual or apparent? I think under both. So what's your distinction then briefly between apparent authority and actual authority in terms of law? What is your understanding of the distinction legally between the two concepts? Well, I'm not sure I can verbalize that. The only thing I would say that I could do would be to rely on those cases that talk about the fact that anybody that's dealing with a special agent, and there are several cases that I've cited in the brief, anybody that's dealing with a special agent, Your Honor, has to be on their toes. They have to be alert. They have to be cognizant of the fact that that special agent does not have the authority to bind that client unless that client has given that authority. I mean, I know that's circular. Counsel, isn't there an issue of detriment to detrimental reliance on apparent authority? In other words, the other side has to rely on the apparent authority to its detriment? I don't think I ever raised detrimental reliance in the brief, Your Honor. I think that certainly maybe I should have. But I don't know that there's any detriment to Mortensen other than the fact that he doesn't get a deal that would be hitting a home run as far as it goes. He's got an $830,000 claim. They're willing to take $105,000 on it, and then he's going to get subrogation tossed in, which could eliminate the whole $105,000. So I suppose that could be detrimental reliance in his terms. Let me ask you a couple of quick questions. Your point was that the issue of subrogation was not raised until 22 minutes or something after the email that said done? That's correct. But you raised it in the email from a couple of days before that, didn't you? In the first email where you guys offered $200,000, the last sentence says he's taking a huge loss. He still wants the option to go after Paul Davis restoration? Right. I don't know whether that's subrogation or not. And if you look at the letters that Mortenson wrote back when the issue became a contested issue, Mortenson wrote a couple of letters. Strike that. Let me go back. The public adjuster wrote a letter saying, you sent us a document that has a waiver of subrogation. I think I can get him to sign. I think we can get this through. Mortenson ducked that and he said, you know, no. But one of those emails specifically said he wants to go after Paul Davis. And there's something that would prevent him from going. And Mortenson very cleverly and correctly answers that email and says he can go after Paul Davis.